I will proceed to the day calendar. The first case is Gale v. Chicago Title Insurance, number 173497. May I proceed? Mr. Jaczynski, please. Thank you, Your Honor. May it please the Court, my name is Matthew Jaczynski. With me is my colleague, Jessica Colombo. We represent the plaintiffs, John Gale and his law firm. The issue in this case is whether a plaintiff who amends a federally filed complaint to dispense with class claims following the unsuccessful attempt at class certification deprives the Court of CAFA jurisdiction. Where, as here, there is no contention that CAFA jurisdiction was lacking at the outset of the case, the answer is no, it does not. This conclusion is compelled by longstanding jurisprudence governing diversity jurisdiction. How do you get around Rockwell? Rockwell seems to me a significant problem for you. Well, Your Honor, there are a few reasons why Rockwell is not an obstacle here, and I would actually kind of invert the idiom. Rockwell is really a sheep in wolf's clothing. Rockwell is sui generis. It's also a Supreme Court case. Yes, absolutely. So here are the reasons why. First of all, let's take the proposition that Rockwell says we look to the amended complaint to assess jurisdiction. What the amended complaint in this case says is that this was filed as a class action and that there was jurisdiction at the outset of the litigation. What matters is what does jurisdiction require? So in Rockwell, it was a federal question case. It was very unique because it was under the False Claims Act, and it was under the original source requirement of the False Claims Act, which at the time was jurisdictional. And the False Claims Act said to be an original source, you had to be an original source of the allegations in the case. Well, what were the allegations in the case? The Supreme Court said, well, they were the allegations of the original complaint as amended. You couldn't be an original source of only allegations contained in the original complaint and not allegations contained in the amended complaint, which in that case were actually the ones that tried, and say that you have original source status. So what was required in that case was not met. And in this case, what was required was met. Do you have any – this is a form of diversity jurisdiction, right? Correct, Your Honor. Do you have any cases in which that say the diversity jurisdiction cannot be amended away? I know that, you know, we have diversity at the very beginning when the complaint is filed, that if a plaintiff moves then and diversity is destroyed by that act, so long as the complaint was brought in good faith and the allegations were made that the diversity jurisdiction is maintained. But if a new complaint is filed that does not have – that an amended complaint in the same, you know, based on the same transaction or occurrence would have you, but the amended complaint does not adequately support diversity jurisdiction, do you have any case saying that diversity nonetheless persists? I'm going to answer yes, although with a caveat, which is that I think what's important is that the amended complaint has to show that jurisdiction exists. But the question is how. So let me give you an example. In this court in LeBlanc – I want to – is this going to be a case that diversity – Yes, it is. The amended complaint doesn't have diversity. Well, yes. So let me give you – LeBlanc was a case in which a Canadian citizen was a plaintiff along with a New York citizen. They sued a New York company. The basis of jurisdiction in the original complaint was admiralty. It was a kayaking accident. Subsequently, the court concluded that there was no admiralty jurisdiction. And so what the plaintiff sought to do was amend to allege diversity jurisdiction and also to remove the non-diverse New York plaintiff. So what was going to be the case was the Canadian citizen was going to be suing the New York company. The only problem was that subsequent to filing the case, the Canadian citizen had become a New York citizen. And so the argument was – But that's a different case. Well, I'm not – I don't think so, Your Honor, because the allegation and what the court allowed – the court allowed the amendment to go forward, and the reason was because she could allege that at the outset there was diversity. She could allege at the outset there was jurisdiction. So even though if she were bringing that case afresh at that point when the amended complaint was filed, she couldn't start that case in court at that time. The amendment was proper because she could allege that she had been diverse at the time the case was filed. This is exactly the same paradigm, where here the allegation in the Fourth Amendment complaint is this case was filed as a class action under CAFA, under Rule 23. It met the standard for the amount in controversy, an aggregate of $5 million, and there's no dispute that there's minimal diversity. If we agree with this, this allows every – you can game this every time you want. You just allege a CAFA claim, and you allege $5 million, and then you get to the Fourth Amendment complaint and you say, oh, geez, no, we're not going to have a class action anymore, and our damages are $4,000. You've back-ended into federal court where you never had a claim in the first place. I don't think so, Your Honor, because what you've just described would still not be allowed. It's not allowed today, as many courts have reminded us. Why isn't that what you did? Well, it's not what we did because we actually moved for class certification, obtained a class. That class was de-certified. And then it was withdrawn, right? Yes. And then you withdrew the CAFA allegations. We didn't withdraw the CAFA allegations, and I think that's critical. What we alleged was the case was brought under CAFA. It was a class action. No, no. Yeah, that it was brought, but that currently you didn't seek CAFA relief. But I think that's no different than if – You didn't meet the – so I don't – I mean – Let me give you another example. If the amount in controversy in the case goes down during the pendency of the litigation, this was a case in the Southern District of Florida, a Regents Bank case, where at the time that the case was brought, the amount in controversy was over the jurisdictional threshold. Subsequently, part of the note was paid down so that it fell underneath the jurisdictional threshold. An amended complaint that reflects that change in circumstances – That's fine, but let's take a different case where you originally alleged $75,000, and then you say, well, we were wrong. It's really only $4,000. If it was wrong at the outset, then in that case the court never had jurisdiction to begin with. But there's no allegation here that the allegation of the amount in controversy was wrong when this case was filed. It was right. In fact, the reason why the case was decertified was because of a change in the law as a result of Walmart and the defendant saying that the monetary relief sought was non-incidental. It was too much. So I think this case actually falls within the ambit of cases where you have a good-faith allegation of diversity jurisdiction that is true at the time. There are subsequent events in the course of litigation. In LeBlanc, it was the party moving from one state to another. Here it was decertification by the court where the case was no longer a class action at that point. And so all our amended complaint did was reflect that fact. And the case law is clear that the denial of class certification, or in turn the decertification, does not deprive the court of Catholic jurisdiction. And just if I may. Please take a little more time. We have some more questions. Walmart just says that Walmart didn't change the law. It just clarified it in a sense. I mean, Walmart's different from LeBlanc going from a Canadian citizen to a New York citizen. That's a change in fact. But Walmart was saying you're not entitled to this. Well, it may well be that your legal theory got cut off from underneath you, but that doesn't mean that it was legitimate when you first alleged it then. Well, Your Honor. That's a different animal, isn't it? Well, no, and here's why. I think when you look at all the circuits to— If Walmart were the law at the time you filed your complaint, would you have had a class action? I think we would have. We would have had to proceed under Rule 23b-3. The grounds upon which you were decertified, wasn't it? Well, we were decertified because we had met the Robinson, I think it was a railroad case, for the standard for 23b-2 certification at the time that we filed it, and then Walmart said no b-2, and so the question was could we proceed under b-3. But let me address your question, Judge Wesley. I seriously question whether you were a legitimate class action at the time you filed. Well, I understand that, Your Honor. But the case law is clear that irrespective of the reason why a court denies class certification, the court doesn't lose jurisdiction at that point. So the fatal flaw here is a completely formalistic one. The moment that the district court decertified the class, nobody disputes it retained capital jurisdiction. So when we say we're not—okay, we accept the court's decision. You mean at the point of decertification? At the point of decertification. No one disputes the mere fact of decertification deprived the court of—or did not deprive the court. Correct. Nobody disputes the court retained jurisdiction at that point. So we're talking about this very formalistic argument that somehow when we amended the complaint to conform to that and when we basically accepted the district judge's determination and said we're not going to try again. Wait a second. The district court decertified your class without prejudice and said that when you proposed amending the complaint, that from his perspective it's not strictly necessary. Right. It's true. That's true, but the buoyant remains. And you've said that it's involuntary, so why did you amend? Right. Okay. So the—I think the point about voluntariness—well, I'll answer your question as to why we amended. We amended because the defendants asked us to amend, because the court had said— The defendants ask you to do things all the time, and, you know, as a lawyer, you always have the option of saying no. And I think with—depending on how this court rules, that's going to dictate what the answer would be going forward. And it's a fair point, and I understand that. I think—and I don't want the court to get hung up on the voluntariness because I don't think that's the critical assessment. I think the assessment is this is the context where there had been a class action that was brought in federal court. It was prosecuted as a class action. Nobody can dispute that. Nobody can dispute as a class action that the aggregate amount in controversy was $5 million. The district court then ruled. Now, nobody disputes that at that point the court retained jurisdiction, and it would have, even if at the moment the court ruled, we said, okay, judge, we're not going to try again. What the defendants contend is simply because the amended complaint reflects that fact that the court lost jurisdiction at that point. And I just do not believe that that's what— An amended complaint that is filed, if you start with a complaint that has both a federal question claim and a state law supplemental jurisdiction claim, if you amend the complaint and remove everything federal about it and refile with just state law complaints, the court typically would look to that complaint and have jurisdiction discretion to continue to take the state law claims, but more typically would dismiss, I think. Right. That is true. Absolutely. So what is different about that situation from yours? That's a federal question rule. That is not a diversity rule. Well, we have—CAFA has a lot of different characteristics, and, you know, it does come under the diversity statute. Nonetheless, it has some federal question aspects to it, I would say. Well, I mean, you know, respectfully, Judge Carney, I guess I would disagree. I mean, I think it's an amendment to the diversity statute. Other circuits that have addressed it have described it as a diversity statute. I believe this court in F-5 Capital and in Ray Touch described it as an amendment to diversity. I think it should be viewed in the context of diversity. And I would ask the court, what happens if we did exactly what we did, amend the complaint, and then we, the plaintiff, turned around and said, oh, Judge, now you've lost jurisdiction. We want to go to state court. What would the defendants be saying then? I mean, there is a—the form manipulation concern that animates so much of the jurisprudence is just not present here. There can be no allegation that this case was either filed in federal court in a way to abuse federal court jurisdiction, as I think one could conclude in the inner Ray Touch case, and there's no contention, nor could there be, that the amendment in this case was some sort of effort at form manipulation. But we need to have a clear rule on what we look to in determining jurisdiction in what context, and we're not going to examine the party's intent all the time. We look at situations that provide a possibility for abuse one way or another. Understood. And I think that there's—I think it would be a mistake to try to draw a bright-line rule that any time there's an amendment, that's it. If you look at this Court's reasoning in the Tong Cook case, for example, which was a case in which the Court said that the legal impossibility of recovery at the outset must be so certain as to virtually negate the plaintiff's good faith in assessing the claim. What is the rule going forward for you to win, that even though you do amend the complaint and take out the CAFA claim, that you're entitled to jurisdiction because the well-pleaded complaint initially had a CAFA claim in it? Yes. And you were decertified? Well, I don't think it—I think that we would win if the Court crafted a rule that said when a plaintiff has made a good faith attempt at class certification  and subsequently the plaintiff amends the complaint in conformity with that decision, that does not oust the Court of CAFA jurisdiction. The problem with that approach is procedural rules in the vast majority of instances have to draw clear lines. I mean, you're inviting litigation over whether the CAFA allegations were in good faith. How would a court ever determine that? I don't think this is any less clear than diversity jurisprudence that currently exists, Your Honor, which looks at—it gives the benefit of the doubt to the plaintiff in alleging the amount in controversy and diversity jurisdiction, and in the Tong Cook case says if it was legally impossible at the time, then that will negate it. So obviously if the plaintiff comes along and says, I'm from New York and my adversary is from Connecticut, and it turns out at that time that was not true, or the plaintiff amends the complaint and says actually that was not true, the Court never had jurisdiction to begin with. If the plaintiff comes along and alleges an amount in controversy over the jurisdictional threshold and ultimately is unable to prove that amount, the case is not dismissed. If it was possible and pled in good faith, but possible, not legally uncertain at the time it was pled, that that was the amount in controversy, then it's accepted. And I think that Reynolds' case out of Florida is an example of that, where actually there was a subsequent event and the note being paid down. Here the subsequent event is the Court's determination that ultimately it would not certify the class and our acquiescence to that. Very good. You have three minutes for rebuttal. We'll hear from your adversary, and I will give your adversary seven minutes on top of the ten he already had. Good morning. May it please the Court. Ross Hirsch from Herrick Feinstein for dependent's appellees. This case is squarely governed by the Supreme Court decision in Rockwell versus the United States. The Court in Rockwell set forth an exception to the once-jurisdiction, always-jurisdiction rule. That exception being, when a plaintiff files a complaint in federal court, voluntarily amends that complaint, the Court looks to the amended complaint to establish jurisdiction. So do you agree, though, that if they hadn't amended their complaint that the Court would have continued to have jurisdiction? Yes. So the amendment of the complaint is the pivotal point. The amendment of the complaint, and also what's relevant here, is the way that the class decertification ruling was handed down. It was not with prejudice. It was without prejudice. And it was also without reasoning. It was unclear what they needed to do to amend their complaint to satisfy the district court on class certification. The Court invited them to attempt again. The Court left it on the table. There were discussions about the parties. But gave no reasoning at all. Isn't that correct? I believe it gave some. This was in a transcript. This was in an oral conference. Correct. Correct. I think, and the Supreme Court in Rockwell went on to say that it's not just about the allegations when the complaint was filed, but if in an amended complaint the plaintiff withdraws the jurisdictional allegations, withdraws the basis from jurisdiction from the complaint, the case should be dismissed unless the plaintiff then puts back other replacement jurisdictional allegations. So when you withdraw the basis for jurisdiction and don't replace it in an amended complaint, the amended complaint is absent jurisdiction. And though my opposing counsel cited the LeBlanc case, that case was pre-Rockwell. Let's look at how this Court, in the circumstances presented here, addressed Rockwell. And I'm talking specifically about in-touch concepts. Albeit in dicta, it addressed the specific circumstances presented here. And by specific circumstances, I'm referring to three factors. The first factor is a claim filed in federal court, not a removal case. The second factor is a CAFA case, a case where the jurisdiction is based on the Class Action Fairness Act. And the third factor is a case where in an amended complaint, the plaintiff withdraws the class allegations. And in-touch, after citing the principle from Rockwell that if this case had been filed originally in federal court, the district court would have had to dismiss it. Sorry. It cites Rockwell for the principle that when a plaintiff files a complaint in federal court and then voluntarily amends, the court looks at the amended complaint. And then this Court went on to say, so if this case had been originally filed in federal court, the district court would have had to dismiss it as soon as plaintiff filed the first amended complaint, which dropped all class allegations and thereby destroyed the basis for jurisdiction. Let's talk for a minute about the circumstances of the amendment of the complaint, because it looked to me like there was a sandbagging element here based on what the transcript showed, that no amendment was, strictly speaking, necessary to go forward. The district court said it's not really necessary. But it looked like counsel for Chicago Title, and that may have been you, kind of insisted on having a complaint filed that conformed to the district court's ruling. The case had been pending for so long without action. It looked like the district court was eagerly awaiting settlement discussions to take place, and years had passed. In order to clarify the legal issue, you all pressed the plaintiffs for an amendment of the complaint, rather than just allowing them to say, okay, we're going forward on an individual basis, which the court's rulings had limited you to in any event. Why shouldn't we infer a measure of bad faith here that would overcome some of the arguments you're making? Respectfully, I don't believe that's an accurate recitation of how this went down. In 2012, when the court decertified the class, the court said specifically to everybody, well, to be clear, I don't mean to apply that no class should ever be certified on any issue in this case. And further went to say, I just want to be sure that nobody misinterprets my ruling. I'm not taking a position now that class certification is not appropriate. I'm simply decertifying the class and allowing for the possibility that a motion to certify might be filed down the road. With all parties understanding that, in 2016, Four years later, with no action. There were motions pending that the court hadn't ruled upon. There was action. There were motions made on standings ground and other motion practice during that time. There was a decision that the parties were waiting for. The plaintiffs were restless and did not want to have to live by the one-way intervention rule and have to wait for the sequencing of motions. So on their own volition, they wrote a letter to the court saying we're prepared to abandon our damages claim and move forward exclusively in our individual capacities. And then, this is critical, at the subsequent court conference on March 9th, 2016, this is what plaintiffs' counsel said. So the question that was left open was, in fact, coming back and removing under B-3. So the class allegations are in the complaint. The intention is, once the standing issue was removed, to come back on a B-3 motion. What we're saying in this letter is that the possibility of that occurring was something we were taking off the table. We discussed this with Mr. Gale. He understands what we are proposing, which is to withdraw in any form the class allegations. Withdraw in any form the damages allegations. This idea is on them. It is their idea. It is their volition. They came to the court with it to accelerate the action. This is a strategic decision that they made. The court specifically left the issue of class certification open, invited it to come back. It was anticipated that they would come back. Yes, the case took a long time to proceed through motion practice. That's not on either party. That is just something. When they moved to dismiss, did they claim that you'd snookered them somehow to withdrawing that? No. Did they tell the judge that you'd acted in bad faith? They made an argument that it was involuntary because of the class decertification, but there were non-accusations of bad faith and there still aren't today. The judge had said that he'd reconsider it, so. Correct. There's been no accusations of bad faith by Plaintiff's counsel, and there couldn't be. This was a strategic decision they made. Whether or not it was a decision that they regret now, that's a different story. But it was a decision that they made. This is the epitome of voluntary. It's not a situation. If you contrast this to the Calvillo case from the South Dakota that plaintiffs rely on, in that case, the class allegations were dismissed with prejudice. The plaintiffs appealed into locatory appeal. That appeal was denied. Then the court instructed, instructed the plaintiffs to amend their complaints to remove the class allegations, and they did. Reading the transcript, Mr. Newman said that's the first order of business. Mr. Newman is who? First American Counsel. Yes. He says the first order of business, as we said in our letter to the court, is for the plaintiffs to move to amend. File that. We have an opportunity to review it. See the claims that are then asserted, that there's only equitable relief, and then we go forward. That will be the fourth amended complaint. And the court says that's not, strictly speaking, necessary. And then they go ahead and do that. You're saying it was their idea to begin with. There was a letter that preceded that that's in the record where it was their idea to remove the class allegations from the action. And I think what was said back to them that the only way to actually remove them from the action is to amend the complaint. The idea to move forward without the class allegations was their idea. No one told them to do anything. No one instructed them to do anything. No one was being held hostage. This was a strategic decision made. There was a dialogue back and forth what it means to remove class allegations from a complaint, and that is through an amendment. But no one told them to do it or persuaded them to do it. But you're saying also that even had they not amended the complaint, or that had they not amended the complaint, the substance of the action would have been the same and the court would have had jurisdiction. The court would have had jurisdiction because the class certification remained open. The class decertification was not, it was not dismissed with prejudice. It was dismissed without prejudice. But it is the act, as the court makes clear in Rockwell, as this court makes clear in the touch, the act of an amendment is an important event. It resets the allegations in a complaint. The court looks to amend a complaint which supersedes the original complaint. And Rockwell dealt with the False Claims Act in which there are very explicit grants of jurisdiction and then jurisdiction stripping provisions in the statute as it stood at the time. Why isn't that different from CAFA? Well, I think Rockwell, though it applied to a specific situation, it set forth a general rule for amendments that drop jurisdictional allegations. It discussed the different circumstances which that would be triggered, and one is here where the jurisdictional allegations are removed. As your adversary has pointed out, though, this is a form of diversity jurisdiction and somewhat different rules apply, right? Sure. So I think it's useful to look at the way courts have applied Rockwell in either CAFA cases or, let's say, regular diversity cases afterwards. With respect to CAFA, you have this court and Dick didn't touch. You have Cunningham in the Seventh Circuit, and you have Wright in the Eleventh Circuit. Changes in diversity between the parties don't affect the court's real jurisdiction, but this is a change in the allegations with regard to the complaint. Correct. So it would be like saying that I'm a citizen of New York, but then I was wrong. I really am a citizen of Connecticut, and there's no diversity. Correct. And I think that the three cases that looked at this, all three circuit court cases that looked at Rockwell in the CAFA context, all in dicta but all consistent, Cunningham, Wright, and in touch, all came out the same way. Once the court decertified, what do you think the options were with respect to amending? The overall options, obviously they had the right to appeal. They had the right to recertify. They didn't have to amend the complaint. What was left? Why didn't they have to? They could proceed on their own claim, right? They could proceed on their own claim, and they could recertify at whatever point they felt appropriate. It was understood that they would move to recertify until the moment they decided not to. You're saying had they not removed the original class action allegations, that notwithstanding the fact that they proceeded individually, they'd be allowed to do that in federal court? Without the amendment. Correct. That's what I meant. Yes. All right. This proposed rule, though, also leave open the possibility that a plaintiff starts with CAFA allegations in federal court, decides that a judge doesn't really like their case, and so amends to eliminate the $5 million element, for example, and gets himself kicked out of federal court so he can try again in state court. Isn't it as manipulable as general removal actions and artful pleading allowed with forum shopping in other cases? No, I don't believe so, Your Honor. If he wanted to be in federal court or state court, he would have started there, wouldn't he? He doesn't have to start in federal court with a $5 million claim, a plaintiff. Correct. If a plaintiff can sue a class action wherever they wish to do so, it might be removed, perhaps, by a defendant under CAFA. But if a plaintiff wants to start in state court, or wants to end up in state court, they could start there, can't they? Correct. The courts have been very clear. But one could also start in federal court, or start in state court, be removed, or start in federal court, and then decide you don't like how things are going, and then drop the CAFA-related allegations. There are lots of machinations that attorneys can do. I think the court has specifically drawn a line between removal cases and non-removal cases to address the forum manipulation concern. That is a line drawn in Rockwell in footnote 6. They specifically distinguish removal from non-removal. This court in Touch did the same, saying there's a special rule in removal cases to address forum manipulation concerns. This is not that. This falls squarely into in Touch. In Touch makes you stay where you started if you try to remove it. Unless if you start in federal court, yes. Right, right. Correct. If you start in federal court, you go under CAFA jurisdiction, you remove all class allegations from the complaint, you no longer have a basis to be in this court because CAFA is diversity, but it is a special kind of diversity. It's based on the nature of the claim. If that nature of the claim no longer exists, if there's no longer a class component to the case, it doesn't belong in this court. Well, unless you can make it a regular 23 class. Correct, and they had an opportunity to move for certification again. They specifically and on their own volition took, in their own words, took that off the table. And in resetting the case without class allegations and without trying to recertify. Once the case was decertified, is it your position that they had the option to stay in federal? Could they stay in federal court at that point and just simply litigate their own individual claim? At that point, yes, with the current posture of the case. It's just the formal act of filing the amended complaint that litigated that posture. Correct, and what that formal act does, even though opposing counsel calls that, tries to insult it by calling formalistic, amended complaint is not a mere form over substance. It becomes the substance of the case, and they no longer have an opportunity to certify. They cannot appeal the original decertification. You're right. It's the jurisdictional hook. It's the basis upon which the court has the authority to act. Correct. So it is not a mere form. It is the form. It is the governing form, and it is a choice they made to replace one form with the other form. And this form governs, and this form doesn't have class allegations. If you're right about Rockwell, then it may seem formal to some, but it is the basis upon which the court has the power to act. Correct. So a layperson may see it as formalistic, but from a judicial perspective, it is the foundation upon which the court has the authority to proceed. That is our analysis, and we believe that the Supreme Court decision and those applying it have found the same. Thank you very much. Thank you. Mr. Jasinski, you have three minutes of rebuttal. Let me just start. Why didn't you amend the complaint? Why didn't you just? Well, obviously, Your Honor, we didn't appreciate that this would become an issue. Right. We didn't appreciate that this would become an issue, Your Honor. Our position. The rule was 2007. No. Understood. Whether we should have appreciated this would become an issue is a different issue, but I'm answering your question as to why. Why was because, from our perspective, everybody agreed we were, at that point, allowed to continue to pursue individual claims. The defendant said, well, to take the putative class nature off the table, which would obviate this one-way intervention rule. But you had already done that. Well, I'm not so sure because the defendant's position was that because there was always the possibility, at least at that point, that we might try again for class certification, that we were back in putative class land, and as a result, they had the right to avoid an adjudication on the merits before class notice under the one-way intervention rule. This was sort of the stumbling block and kind of, I think, was part of the reason for the delay. But at any event, to take that issue off the table and, as they put it, to help them decide what we're settling, they said they think the first order of business is to amend the complaint. But is your adversary correct that you first proposed this in a letter to the court? We did not propose amending the complaint. What we said to the court was, after decertification, we had expressed an intent to try again. We didn't have to do that. And I don't think that my adversary is saying that the court would have lost jurisdiction if, at the moment of decertification, said, we're not going to try again. But we said we're going to try. No, he's fair. You're right. Right? And so the reason I say that's important is because what we took off the table was, we're not going to try again. And we didn't say we're going to do it by way of amendment. We just said we're not going to try again. We're just going to proceed on the individual claim. Why didn't you just write a letter and say that? We did write a letter, and then the defendants asked us to amend.  Which was to say, in this case, this is sort of equivalent to us saying we were wrong. That's absolutely not true. This is not a diversity case where we come in and say, oh, we were wrong, we weren't diverse. Or we were wrong, we didn't meet the threshold. No, no, no, no. We allege in the Fourth Amendment complaint. We were right. We brought a class action. And nobody disputes it really was a real class action, not an attempt to manipulate the forum. We ultimately lost, and we acquiesced to the judge's decision. The fact — But then you withdrew the jurisdictional allegation. I disagree, Your Honor. We did not. Stop for a second. Yes, Your Honor. If you're wrong, do you lose? If I'm wrong about what? That you withdrew the jurisdictional allegation. Yes. Did you lose? Yes. Okay. If we withdrew jurisdictional allegations, but we didn't. Because what we allege in the amended complaint is the state of things at the time of filing, which is what all of the precedent says about CAFA. The state of things at the time of filing was this was a case filed as a class action. It was a case that met the amount of controversy. If the Fourth Amendment complaint withdraws the CAFA allegation, do you lose? If it withdraws the CAFA allegation, we lose. It does not withdraw the CAFA allegation. I understand that. Yes. But it does not. And I think the — Take a minute. That's okay. Go ahead and answer. Thank you, Your Honor. This is a novel question. The cases from other circuits post-Rockwell have not directly addressed this. They have all said we're not getting to the amendment question. The Wright case said we're not getting to the amendment question. In re touch was dicta. I think it's very important to consider that this is in the paradigm of diversity. And I think, Judge Carney, your concern about what if this invites a plaintiff who files in federal court, wants to be there, and then down the road finds things aren't working out so well, can just amend the class allegations and say, you know, hey, we're going to state court now. That's not allowed. If there were any argument that when we filed this case, we didn't have grounds upon which to file it as a class action with those jurisdictional allegations, then there wouldn't have been jurisdiction at the outset. That's not my hypothetical, though. My hypothetical is you had grounds to make good-faith CAFA allegations, and then you decide you don't really want to be there because things aren't going well. So you just amend the complaint. And so you kind of effect a reverse removal. You get yourselves out of the jurisdiction that you're in and try your luck elsewhere. And we shouldn't be allowed to do that. What prevents you from doing that under your rule? Well, our rule is the court now has jurisdiction at the outset and retains jurisdiction. We are not allowed to amend away jurisdiction by simply taking away the class allegation when it was in good faith at the time that it was brought, and there's no dispute that it was. So the issues of form manipulation go both ways, and I think at this point now we have an attempt at form manipulation by the defendants. Thank you. Very good. Thank you very much. Thank you for your arguments. We'll reserve decision.